UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                          ) Case No. 18-13677-B-9
                               )
**COALINGA REGIONAL MEDICAL**  ) DC No. WW-14
**CENTER**, a California local )
health care district,          )
                               )
                Debtor.        )
_____)


**MEMORANDUM DECISION**


**INTRODUCTION**

Creditor's committees play valuable roles in chapters 11 and 9 reorganization dramas. They can be inconvenient antagonists for certain debtors trying to emerge at play's end fully reorganized with new funds from a powerful secured creditor. They can be protagonists opposing strong constituencies in a herculean battle for the debtor's existence. This dispute is not about those roles. This is about how the committee's role is introduced.

Here the United States trustee for Region 17 ("UST") appointed a committee of unsecured creditors ("Committee") under authority UST purportedly has under 11 U.S.C. § 1102(a)(1) but the debtor, a rural hospital district, opposes the appointment contending UST did not have that authority under that subsection. After reviewing the positions of the characters in this drama, the court concludes Committee's role was not

correctly introduced. 11 U.S.C. § 1102(a)(1) does not authorize Committee's appointment in this chapter 9 case and Committee should be disbanded.

**FACTS**

A. Pertinent developments since the Chapter 9 filing.

For almost seventy years, the Coalinga Regional Medical Center ("Debtor" or "CRMC") provided medical services to residents in a 900 square mile section of southwestern Fresno County in Central California. Facing financial tumult and numerous lawsuits for many years, CRMC's Board of Directors elected to close the hospital temporarily and filed a petition under Chapter 9 of the United States Bankruptcy Code in September 2018.

Two months later and before entry of the Order for Relief, UST filed its Notice of Appointment of Unsecured Creditors' Committee under 11 U.S.C. §§ 901 and 1102(a). The two committee members were Beckman Coulter, Inc. ("Beckman") and Elitecare Medical Staffing, Inc. ("Elitecare"). Doc. #55. Both creditors filed claims exceeding $200,000.00. Beckman furnished medical equipment, supplies and leasing services to CRMC. Elitecare provided temporary medical personnel. The court entered the Order for Relief on December 21, 2018. Doc. #78. Sometime later, the UST filed an "Amended Appointment of Official Committee of Unsecured Creditors" stating the two committee members were appointed to the Committee effective December 21, 2018. Doc. #159.

During the three months after entry of the Order for Relief, Debtor sought and obtained approval to limit notices, to reject certain executory contracts, and to fix a bar date for filing proofs of claim. Committee was silent. Then Debtor filed a motion for court approval of a proposal to lease the acute care hospital and other facilities to Coalinga Medical Center, LLC, an affiliate of American Advance Management Group ("CMC transaction"). CRMC's Board and the district's voters approved the CMC transaction - understandable since the hospital would reopen if the court approved.[1]

Now resuscitated, Committee applied to employ two law firms as counsel: Smiley Wang-Ekvall, LLP (doc. #122) and Frandzel, Robins, Bloom and Csato, L.C. (doc. #127). Debtor objected to both applications. Doc. ##143, 146.[2] Debtor's arguments opposing the applications largely raise the arguments addressed here. Debtor also asserts that a committee is unnecessary and that the debtor cannot be compelled to pay counsel fees. The court has not ruled on these applications.

Committee filed a limited opposition to the CMC transaction.[3] Committee's concerns were: whether the transaction was Debtor's best option, the fate of a portion of the sale or lease proceeds that were arguably free of the interests of the bondholders, and whether the better vehicle for the CMC

---

[1] The CMC transaction also involved a "purchase option" of CRMC's real property and the sale of personal property assets.

[2] Debtor also objected to Elitecare's claim but that objection has not been heard. Doc. #177.

[3] Committee has been referred to by the court and Debtor as "putative creditors committee" since this dispute arose. Also, Debtor has consistently asserted in its pleadings that even though "committee" is referenced, Debtor neither concedes that the appointment of the committee is valid nor consents to payment of any fees if counsel is appointed.

transaction was in a Plan of Adjustment.  The court approved the CMC transaction.

A month later, Beckman filed its own motion asking the court to appoint an Unsecured Creditors Committee under 11 U.S.C. § 1102(a)(2) – applicable in Chapter 9 cases under §901(a) – which authorizes the court to appoint "additional committees" if necessary "to assure adequate representation."[4] Alternatively, Beckman asks the court to "ratify" the UST's appointment of Committee.  Almost concurrently, Debtor filed this motion to vacate appointment of Committee and to disband Committee.[5]  The hearings on Debtor's and Beckman's motions (and the motions for appointment of Committee counsel) have been continued at the parties' request for about four months.

Meanwhile, the Chapter 9 has advanced apace.  CRMC asked the court to approve a loan transaction and CRMC's issuance of new revenue bonds to "refinance" certificates of participation (COP) that would be in default since the CMC transaction involved a lease to a private entity.  Certain benefits enjoyed by Debtor, if approved, included releases of certain liens and a lower interest rate.  This transaction was approved.  Debtor filed many motions to reject certain executory contracts. Debtor also sought and obtained orders about service and scheduling hearings on the Plan of Adjustment and Disclosure

---

[4] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[5] Beckman's motion has been continued to "track" this motion.

4

Statement.  Debtor also filed a Plan of Adjustment and
Disclosure Statement.[6]

B.  The arguments.

     Debtor contends that the UST lacks authority to appoint
unsecured creditors' committees in chapter 9 cases under 11
U.S.C. § 1102(a)(1).  First, the plain language of § 1102(a)(1)
does not give the UST authority; it only applies in Chapter 11
cases.  Second, the "[UST] has virtually no role in a chapter 9
case due, in part, to the reservation of rights to the States
that are not delegated to the federal government in accordance
with the Tenth Amendment of the United States Constitution."
Doc. #223.  And third, the statute listing UST's authorized
duties, 28 U.S.C. § 586, omits any reference to chapter 9.
Debtor heavily relies on Judge Rhodes' decision, In re City of
Detroit, 519 B.R. 673 (Bankr. E.D. Mich. 2014) ("Detroit"), the
only published decision the parties or the court found
confronting the UST's authority to appoint committees in Chapter
9 cases.

     Debtor also contends that § 105(a) as implemented by Rule
2020 (providing the procedure to contest any act of the UST)
authorizes the court to disband Committee.  Debtor again relies
on Detroit to support its argument.

     Beckman argues that the UST has the authority to appoint a
Committee under §§ 901 and 1102, and the court has the authority
to vacate a committee formed thereunder pursuant to § 105, but
such a remedy is not warranted in this instance.  Doc. #292.
Because § 1102 is incorporated in its entirety, Beckman urges,

---

[6] Debtor has requested the hearing on the disclosure statement be
continued for about two months.

§ 1102(a)(1) is applicable in chapter 9 cases.  <u>Id.</u>  Lastly, Beckman argues that disbanding Committee is unwarranted because Debtor cannot adequately represent the interests of the unsecured creditors since they are "a diverse set of creditors, including . . . trade creditors, employees and lessors."  <u>Id.</u> <u>Detroit</u> is not binding on this court, Beckman reminds us, and argues that it is not persuasive because numerous committees have been appointed in Chapter 9 cases in this circuit in the past.  Nevertheless, any review of UST actions should be on an "abuse of discretion" basis and Debtor has not established that UST has abused its discretion here.  <u>Id.</u>

     The UST argues that it has authority under §§ 901 and 1102 to appoint a committee of unsecured creditors.  Doc. #294.  UST points out that § 901(a) includes both entire sections (e.g., §§ 301, 333, etc.) and subsections (e.g., §§ 347(b), 350(b), etc.), establishing Congress' intent to incorporate § 1102 in its entirety – i.e., if Congress wanted to exclude § 1102(a)(1), it knew how.  This fact, UST claims, is evidenced in § 1161 (incorporating certain Code provisions in railroad reorganizations) which specifically excludes § 1102(a)(1). Congress chose not to explicitly exclude § 1102(a)(1) under § 901, which means, according to UST, it intended for § 1102(a)(1) to be applicable in chapter 9 cases.  Doc. #294. <u>Detroit</u> did not discuss § 1161 so, UST claims, that case is not persuasive.

     Another example why § 1102(a)(1) should be read to include Chapter 9, UST contends, is § 1109.  That section provides for parties' rights to be heard in "this chapter" (Chapter 11) and

is incorporated in Chapter 9.  Putting aside the language "after
the order for relief under Chapter 11 . . .," UST infers if
§ 1102(a)(1) is read to exclude Chapter 9, it would render
§ 1109 meaningless.  Id.  UST notes Detroit did not analyze
§ 1109 either.

Finally, UST argues that the court does not have authority
to disband Committee.  Section 1102 enumerates the court's and
the UST's authority pertaining to committees – and nowhere is
the court given authority to disband a committee.  Supporting
their contention, the UST cites two decisions in Chapter 11
cases from the Northern District of Illinois: In re Shorebank
Corp., 467 B.R. 156, 164 (Bankr. N.D. Ill. 2012) ("Shorebank")
(finding no power to "reconstitute" committee membership by
reviewing UST actions) and In re Caesars Entm't Operating Co.,
526 B.R. 265, 269-70 (Bankr. N.D. Ill. 2015) ("Caesars")
(§ 105(a) cannot be a basis to disband a committee since court
powers over committees are enumerated in §§ 1102 and 1103).

Committee's opposition largely follows the UST's
opposition.  Also, Committee urges the court to look at the
whole statute (both Chapter 9 and incorporated provisions of the
Code).  Section 1102 was amended in 1986, Committee correctly
points out, eliminating the court's role in committee formation
and limiting court review of committee composition and cites In
re WHEELER TECH., 139 B.R. 235, 239 (B.A.P. 9th Cir. 1992)
(repeal of § 1102(c) in 1986 prevented the court from removing a
member of a Chapter 11 creditors committee).  Committee adds
another example of a statute incorporated in Chapter 9 that is
not fully applicable: § 1125, which is incorporated without

exception in Chapter 9, though § 1125(f) only applies in small business cases.[7] Doc. #296.

Committee does argue though that even if the court did find that it had the authority to disband the Committee, it is in the court's discretion to do so, and disbandment is not appropriate here. Id.

Debtor has replied to these arguments. The plain reading of § 1102(a)(1) limiting its applicability to Chapter 11 cases, Debtor says, supports its position the UST has no authority to unilaterally appoint Committee. Debtor offers its own example of a statute being incorporated into Chapter 9 with some subsections inapplicable, § 503. Debtor distinguishes the cases cited by the opposition as not reaching the issue of the authority of the UST in those cases. Debtor cites In re Pac. Ave., LLC, 467 B.R. 868 (Bankr. W.D.N.C. 2012) as an example of a court, in a Chapter 11 case, using § 105 to disband a committee.

## JURISDICTION

The United States District Court for the Eastern District of California has jurisdiction over this matter under 28 U.S.C. § 1334(b) since this is a proceeding arising under title 11 of the United States Code. This court has jurisdiction to hear and determine this matter by reference from the District Court under

---

[7] "Small business" provisions in the Code are inapplicable in Chapter 9 cases. A "small business debtor" is a "person." § 101(51D)(A). "Person" does not include a "governmental unit" subject to exceptions inapplicable here. "Governmental units" include municipalities. § 101(41). Debtor here is a "municipality" as defined by § 101(40).

28 U.S.C. § 157(a).  This is a "core" matter under 28 U.S.C.
§ 157(b)(2)(A).

**ANALYSIS**

1.  The controversy.

Chapter 9, to implement its provisions, partially relies on
sections of the bankruptcy code that are applicable to or part
of other chapters.  The incorporated sections and subsections
are listed in § 901(a).  Sections referenced in full include
§ 1102, the section dealing with creditors' committees.  Amended
in 1986, § 1102 removes the court from the initial committee
appointment process and confers that authority to the UST.[8]  But,
§ 901(a) was not amended then and no change has since been made
to § 901(a)'s reference to § 1102.

Under § 1102(a)(1) the UST has both a mandatory duty to
appoint an unsecured creditors committee and discretionary
authority to appoint "additional committees . . . as the [UST]
deems appropriate." But this subsection provides the "mandatory"
appointment (Detroit holds the discretionary authority also) is
to be exercised "as soon as practicable ***after the order for
relief under chapter 11 of this title***" (emphasis added).

Tension arises between the plain understanding of the
limiting phrase "under chapter 11 of this title," the historical
appointment of committees in Chapter 9 cases, harmonious
construction of statutes to give effect to all provisions, and
the important role creditors' committees often play in
reorganization cases under chapters 11 and 9.  This friction is

---

[8] P.L. 99-554, Title II, Subtitle A, § 221, 100 Stat. 3101 (1986).

apparent here as the court must reach two issues.  First, UST's
authority, if any, to unilaterally appoint a creditors'
committee in a chapter 9 case under § 1102(a)(1).[9]  Second, if
there is no such authority, the court's power to disband the
committee that has been appointed.  This decision begins with a
brief exposition the law the parties rely upon.  Then the court
will consider the specific issues.

2.  The parties legal foundations.

The UST's standing to appear in any bankruptcy case is
provided under § 307:

> The United States trustee may raise and may appear and
> be heard on any issue in any case or proceeding under
> this title . . . .

This provision is not incorporated in Chapter 9 by § 901.
Nevertheless, even Detroit recognizes the UST's interest in
defending its own actions and should be heard.  Detroit, 519 B.R.
at 677.

Navigation of definitional problems when sections outside
chapter 9 are applied in chapter 9 is provided in § 901(b):

> A term used in a section of this title made applicable
> in a case under this chapter by subsection (a) of this
> section . . . has the meaning defined for such term
> for the purpose of such applicable section, unless
> such term is otherwise defined in section 902 of this
> title.

---

[9] No party including the Debtor disputes the UST has authority to
appoint an "additional" committee in a chapter 9 case if directed to by the
court under § 1102(a)(2).

So, unless a term used in an incorporated section is otherwise defined under chapter 9, the term means the same as if the case were not pending under chapter 9.

The last germane statutory discussion in this portion of the decision is a statute both parties rely upon, § 105(a). As pertinent here, it provides:

> The court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title . . . [The court may] sua sponte [take]. . . any action or [make] any determination necessary or appropriate to enforce or implement court . . . rules . . . .

Though this authority is substantial, it is not without limits. <u>Deocampo v. Potts</u>, 836 F.3d 1134, 1143 (9th Cir. 2016).[10]

<u>Detroit</u> is relied upon by Debtor and limited or distinguished by Committee, Beckman, and UST. <u>Detroit</u> held that § 1102(a)(1) is not applicable in chapter 9 cases and that a bankruptcy court has the authority under § 105(a) to disband a creditors committee if the court could find that doing so was "necessary or appropriate" to carry out the provisions of the bankruptcy code under § 105(a). See <u>Detroit</u>, 519 B.R. at 680. The court found that the phrase "as soon as practicable after the order for relief under chapter 11 of this title" in § 1102 effectively limited § 1102 to chapter 11 exclusively. <u>Id.</u> at 677-78. "To interpret the limiting phrase any other way would be to read it out of the statute. This is an unacceptable result." <u>Id.</u> at 677 (citations omitted). <u>Detroit</u> also held

---

[10] Arguably, § 105(a)'s broad authority can be applied to acts of the UST through Rule 2020 providing that "contested matter" is the forum for a review of any act or failure to act by the UST.

11

that § 901(a)'s incorporation of the entirety of § 1102 did not "compel a different result" because other subsections of § 1102 clearly did not apply in chapter 9 cases, such as § 1102(a)(3) and § 1102(b)(2). Id. at 678.

UST's historical appointments of committees was not persuasive to the court in Detroit. The court stated that "[b]ecause the issue here is one of first impression, the Court considers the express limiting language of § 1102(a)(1) to be of much greater significance than the customary practice of the U.S. Trustee in appointing committees of unsecured creditors in chapter 9 cases." Id.

The court in Detroit also found that because the appointment of the committee was "null and void", the committee should be disbanded. Id. at 679. Alternatively, Detroit held that § 105(a) provided authority to disband the committee since there is no code provision specifically preventing the court from disbanding the committee. Id. at 679-80. Finding neither the value nor its cost justified keeping the committee, id. at 680-82, the court held disbanding the committee was "necessary and appropriate" to carry out the provisions of the bankruptcy code in that case.

3. UST's authority to appoint committees in chapter 9 under § 1102(a)(1).

"It is a bedrock principle of statutory construction that a statute should not be interpreted in a manner that renders any part of it ineffective." In re Anderson, No. 19-11221, 2019 WL 4201512, at *3 (Bankr. D. Mass. Sept. 4, 2019) (citing Corley v. U.S., 556 U.S. 303, 314, 129 S. Ct. 1558 (2009) (citing Hibbs v.

*Winn*, 542 U.S. 88, 101, 124 S. Ct. 2276 (2004) (quoting 2A N.

Singer, Statutes and Statutory Construction § 46.06, 99. 181-186

(rev. 6th ed. 2000) ("[A] statute should be construed so that

effect is given to all its provisions, so that no part will be

inoperative or superfluous, void or insignificant . . ."); see

also Clark v. Rameker, 573 U.S. 122, 131, 134 S. Ct. 2242, 2248

(2014) (citing Corley v. U.S., 556 U.S. 303, 314, 129 S. Ct.

1558 (2009).  Where Congress "includes particular language in

one section of a statute but omits it in another section of the

same Act, it is generally presumed that Congress acts

intentionally and purposefully in the disparate inclusion or

exclusion."  Bates v. United States, 522 U.S. 23, 29 (1997)

(citations omitted).  "[W]e keep in mind that statutory

provisions are to be read in harmony in the context of the whole

statute."  Parks v. Drummond (In re Parks), 475 B.R. 703, 708

(B.A.P. 9th Cir. 2012) (citing In re Hougland, 886 F.2d 1182,

1184 (9th Cir. 1989) (citing Davis v. Mich. Dep't of the

Treasury, 489 U.S. 803, 809 (1989)).  "[A]ll parts of a statute

are to be read as a whole, and in harmony with one another."

Culver v. Chiu (In re Chiu), 266 B.R. 743, 747, 750 (B.A.P. 9th

Cir. 2001), aff'd, 304 F.3d 905 (9th Cir. 2002).

Statutory construction is a "holistic endeavor" where

courts "must look not only to the 'particular statutory language

at issue' but also to 'the language and design of the statute as

a whole.'"  Zazzali v. United States (In re DBSI, Inc.), 869

F.3d 1004, 1010 (9th Cir. 2017) (citations omitted).  The "text

is only the starting point."  Kelly v. Robinson, 479 U.S. 36,

43, 107 S. Ct. 353 (1986).  "In expounding a statute, we must

not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." <u>Kelly</u>, 479 U.S. at 43 (citations omitted).

"The task of resolving [a] dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself (citations omitted) . . . it is also where the inquiry should end, for where . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" <u>United States v. Ron Pair Enters.</u>, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989).  But there are "rare cases" where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling." <u>Griffin v. Oceanic Contractors</u>, 458 U.S. 564, 571, 102 S. Ct. 3245, 3250 (1982).

There is nothing ambiguous or mysterious about § 1102(a)(1).  The subsection plainly states the condition to the UST's exercise of its authority is "after the order for relief under chapter 11."  There is no "order for relief under chapter 11" in a chapter 9 case.  That condition applies to both the UST's mandatory "duty" to appoint a committee of creditors with unsecured claims and its discretionary authority to appoint additional committees of creditors or equity security holders as the UST deems appropriate under § 1102(a)(1).  <u>See</u> <u>In re City of Detroit</u>, 519 B.R. 673, 677 (Bankr. E.D. Mich. 2014).  This application of the subsection is not "demonstrably at odds with the intentions of its drafters."  No party has referred the court and the court has not found any authority saying it was

1  the Code's drafters' intention to require the UST to

2  unilaterally appoint an unsecured creditors' committee or permit

3  the UST to appoint additional committees under § 1102(a)(1) in a

4  chapter 9 case.

5       There is other support for this interpretation. First,

6  other statutory provisions support the conclusion. Section 307,

7  which gives the UST authority to "raise and . . . appear and be

8  heard on any issue in any case or proceeding under this title"

9  is not incorporated in chapter 9. Also, § 103(f) states

10  "[e]xcept as provided in section 901 of this title, only

11  chapters 1 and 9 of this title apply in a case under such

12  chapter 9." Section 901 does incorporate many sections of

13  chapters 3, 5, and 11, but interpreting §§ 103(f) and 901(a)

14  together indicates that Congress intended to limit the UST's

15  role in chapter 9 cases.

16       Second, other provisions of § 1102 are inapplicable in

17  chapter 9 cases even though it is fully incorporated in Chapter

18  9. So, there is nothing logically or legally inconsistent about

19  a literal application of § 1102(a)(1) excluding its application

20  in chapter 9 cases. The court may order no committee be

21  appointed in a case involving a small business debtor. See

22  § 1102(a)(3). A chapter 9 debtor cannot be a small business

23  debtor.[11] Provisions governing equity security holder committees

24  have no application because a chapter 9 debtor will not have

25  equity security holders. See § 1102(b)(2).

26       Third, the duties of a committee are included in

27  § 1102(b)(3) and that provision is applicable if the committee

28

---

[11] See footnote 7 above.

15

1  is appointed under § 1102(a).  Consequently, a committee

2  appointed under § 1102(a)(2) would be subject to § 1102(b)(3)'s

3  provisions.

4     Fourth, § 901(a) may incorporate the entirety of § 1102,

5  but § 901(b) clarifies the limitations.  Applying § 901(b)

6  definitional rules to the contested phrase here, "under chapter

7  11" results in the following:

8

9     A term [i.e. "chapter 11"] used in a section [of Title
   11] made applicable in [chapter 9] by subsection (a)

10     [i.e., § 1102] or section 103(e) [of Title 11] has the
   meaning defined for such term [i.e. "chapter 11"] for

11     the purpose of such applicable section [i.e. § 1102],
   unless such term is otherwise defined in section 902

12     [of Title 11].

13

14  Section 902 does not define "chapter 11" nor does it state

15  references to "chapter 11" are to be read as "chapter 9."

16     In short, under §§ 307, 901(a), 901(b), 1102, applicable

17  federal rules of statutory interpretation, and this court

18  finding <u>Detroit</u> persuasive here, UST does not have authority

19  under § 1102(a)(1) to appoint an unsecured creditors' committee

20  in a chapter 9 case.

21     UST's historical "practice" of appointing committees is not

22  a reason to ignore statutory language.  The parties dispute

23  whether UST's chapter 9 committee appointments are "regular."

24  That is beyond the point.  No party has provided an example

25  (except <u>Detroit</u>) where a court examines UST authority to appoint

26  a committee in chapter 9 under § 1102(a)(1).  <u>Detroit</u> holds the

27  UST does not.[12]

28     [12] There are many reasons UST committee appointments in chapter 9 cases
may go unchallenged including: the debtor wants an ally in negotiating with

Nor do the authorities cited support the UST's action here. UST cites the Advisory Committee note to the 1991 amendment to Rule 2014. <u>See</u> doc. #294.  The note provides in part that UST "appoints committees pursuant to § 1102 of the Code which is applicable in chapter 9 cases under § 901." Fed. R. Bankr. P. 2014 advisory committee's note to 1991 amendments.  But that note is consistent with the notion that the UST has no authority to appoint committees under § 1102(a)(1).  The UST's reliance on <u>In re E. Shoshone Hosp. Dist.</u>, 226 B.R. 430 (Bankr. D. Idaho 1998) is inapposite because that case does not reach the issue of UST authority.  The case dealt with a chapter 9 debtor's counsel's fee application.  There was no discussion of UST authority under § 1102(a)(1).  Likewise, <u>In re Colo. Ctr. Metro. Dist.</u>, 113 B.R. 25 (Bankr. D. Colo. 1990) is inapposite.  There, the court held the appointment of a bondholders committee in that chapter 9 case before entry of the order for relief was improper and the committee therefore had no standing to prosecute a motion extending time to oppose entry of the order for relief.  <u>See id.</u> at 27.  UST authority to appoint the committee was assumed.

Legislative history and "aggregate statutory construction" do not negate the language of § 1102(a)(1).  First, "given [a] straightforward statutory command, there is no reason to resort to legislative history." <u>United States v. Gonzalez</u>, 520 U.S. 1, 6, 117 S. Ct. 1032, 1035 (1997).  The Supreme Court has

---

bondholders secured by liens, the debtor can more easily negotiate a Plan of Adjustment with its creditors represented by the committee, or case participants can avoid a public relations fracas if a sympathetic constituency (i.e. retirees or public safety personnel)are collectively represented.

construed bankruptcy statutes strictly and either ignored or
discounted legislative history in several cases.  <u>See</u> <u>United
States v. Ron Pair Enters.</u>, 109 S. Ct. 1026, 1030 (1989);
<u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530
U.S. 1, 6, 120 S. Ct. 1942, 1947 (2000) (administrative
claimants unable to seek payment from property secured by a
creditor's lien); and <u>Lamie v. United States Tr.</u>, 540 U.S. 526,
534, 124 S. Ct. 1023, 1033-34 (2004) (reading statute
authorizing payment of professionals from estate assets as
excluding counsel for chapter 7 debtor even though wording is
"awkward, and . . . ungrammatical").  The condition of "order
for relief under chapter 11" triggering UST committee
appointment authority is straightforward.

        Second, when a court takes the "aggregate view" of a
statutory scheme to interpret statutes, there are seemingly
contradictory or inconsistent provisions at issue.  No such
contradiction is present here.  True enough, § 1102 is fully
incorporated in chapter 9 under § 901(a).  But there is no
inherent paradox in giving effect to all the language of § 1102
even though some language is inapplicable in chapter 9.

        In <u>Zazzali v. United States (In re DBSI, Inc.)</u>, 869 F.3d
1004 (9th Cir. 2017), a case cited by Committee, the Ninth
Circuit illustrates the point.  The court in <u>DBSI</u> held that one
section of the Code authorizing trustees to use state laws to
avoid certain transfers, § 544(b)(1), could not be applied
isolated from a broad waiver of sovereign immunity found
elsewhere, § 106(a)(1).  <u>Id.</u> at 1010.  In <u>DBSI</u>, the creditor-
transferee (IRS) contended that under the state law used by the

trustee to avoid a $13.4 million transfer, the IRS would have sovereign immunity to avoid a claim by a creditor to avoid the transfer as a fraudulent conveyance. Id. at 1008. So, the IRS argued, it should not be subject to the trustee's avoidance claim. Id. The Ninth Circuit parted from another circuit's holding and found the broad waiver of sovereign immunity under § 106 applied permitting the suit to proceed. Id. at 1016. True, DBSI did harmonize two statutes but the operative statute used by the trustee there arguably limited the reach of the avoidance power. Nothing here reaches that quandary. Rather, a straightforward application of § 1102(a)(1) by its terms does not eliminate the potential appointment of a committee; just the way it happens.

In fact, the rationale of DBSI supports the court's reasoning here. First, DBSI noted that when enacting a statute, Congress is presumed to be aware of existing law. Id. at 1011 (citations omitted). When Congress amended § 1102 in 1986, it presumably knew the section was incorporated in chapter 9. Nevertheless, the condition on UST exercising authority was enacted.

Second, DBSI also relied on the rule that a statute should not be interpreted to nullify another statute. Id. at 1011 (citations omitted). The responding parties here urge an interpretation nullifying language in § 1102(a)(1).

Third, DBSI cites Keene Corp. v. United States, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040-41 (1993) which held that Congress acts intentionally in disparate inclusion or exclusion in statutes. In re DBSI, 869 F.3d at 1012. Here the general

inclusion of all § 1102 in chapter 9 and the condition of "order for relief in chapter 11" under § 1102(a)(1) must be intentional and not "inadvertent."[13]

References to other sections of the bankruptcy code incorporated into chapter 9 suggested by the parties do not undermine the analysis. Section 1109, which establishes rights to be heard, contains a vague reference to "this chapter." That gives § 1109 equal breadth in chapters 9 and 11. Section 1125, which deals with disclosure statements, is incorporated fully in chapter 9, but § 1125(f) is only applicable in small business cases and "ignored" in chapter 9 cases.[14] This subsection added in 1994 – § 901 was not amended then – does not nullify the application of § 1125 in chapter 9 cases. In fact, proceeding in chapter 9 without giving effect to § 1125(f) is consistent with the court's analysis of § 1102(a)(1) here. Finally, § 1161's specific exclusion of § 1102(a)(1) in railroad reorganizations further evidences Congress' intentional exclusion which is consistent with this result.

_____

[13] Committee urges that § 348(b) is a further example of "Congressional inadvertence." That subsection incorporates many other sections including § 1102(a) and provides that if a case is converted to another chapter, where the words "the order for relief under this chapter" appears it means the conversion of the case to the new chapter. A strict reading of § 1102(a)(1) would mean, Committee argues, no committee would automatically be appointed by UST in the new chapter since § 1102(a)(1) references chapter 11 instead of "this chapter." First, §348(b) cannot be read to take away rights or duties. It merely eliminates confusion when certain rights or duties start upon conversion. Second, Committee presents no example where this minor variance has any practical impact. Third, Committee's "heavy burden" to establish that either statute displaces the other has not been met here. See Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1624 (2018), and cases cited therein, and Trevino v. Select Portfolio Servicing, Inc., 599 B.R. 526, 541 (Bankr. S.D. Tex. 2019).

[14] Why small business provisions are inapplicable in chapter 9 is discussed elsewhere. See footnotes 7 and 11 above.

## 4. Disbanding the committee is authorized by law.

Finding that UST was not authorized to appoint Committee since § 1102(a)(1) does not apply in a chapter 9 case, the Committee's appointment was void and Committee should be disbanded.  In re City of Detroit, 519 B.R. 673, 679 (Bankr. E.D. Mich. 2014).  On the other hand, if the appointment was voidable, then § 105(a) gives the court authority to order Committee disbanded since it is necessary to carry out the provisions of title 11.  Section 1102(a)(1) does not apply in chapter 9 and to carry out that provision as it is written, Committee should be disbanded.

First, the authorities cited supporting the court's limited authority to disband the committee are not persuasive.  UST and Committee argue that UST alone has the authority to disband a committee because § 1102 is clear in that regard[15] and "the express mention of one thing excludes all others."[16]  Doc. #294. Applying this to § 1102(a)(1), and specifically the phrase "under chapter 11 of this title," would therefore mean that "under chapter 11" excludes chapter 9 because Congress says what it means, this language is unambiguous, and that therefore "the express mention of [chapter 11] excludes [chapter 9]."

More to the point, UST and Committee contend that the court's authority over committees is limited to the provisions

---

[15] "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. [citations omitted]. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149 (1992) (citations omitted).

[16] The canon of construction "*expressio unius est exclusio alterius*." See Cont'l Ill. Nat'l Bank & Tr. Co. v. Chi., R.I. & P.R. Co., 294 U.S. 648, 677, 55 S. Ct. 595, 607 (1935); Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 885 (9th Cir. 2005).

of §§ 1102(a)(2), (3), (4) and 1103(a).  Not so.  Those provisions presume a proper committee appointment in the first place.  The court has determined Committee here was not appointed under the proper procedure in a chapter 9 case.

Neither Shorebank nor Caesars are apposite here.  Both well-reasoned decisions from the Northern District of Illinois were chapter 11 cases.  Shorebank predates Detroit and does hold the court has no power under the Code to remove committee members since the power is not included in §§ 1102 or 1103.  But, the issue of UST authority to appoint the committee was not part of the decision.  Caesars postdates Detroit and disagrees that the Detroit court properly used § 105(a) as authority to disband the committee.  But the UST unquestionably had authority to appoint the committee in Caesars.  The issue was not examined because it was not necessary for the Caesars court.[17]  Besides, the Detroit court used § 105(a) as an alternative ground for disbanding the committee.  Detroit, 519 B.R. at 679 ("[i]n the alternative, the Court concludes that even if § 1102(a)(1) does apply . . . the Court is authorized to vacate the appointment of the Committee pursuant to 11 U.S.C. § 105 . . .").

Second, the court here is not ordering something that is precluded by the Code.  The Supreme Court held in Law v. Siegel, 571 U.S. 415, 420-21, 134 S. Ct. 1188, 1194 (2014) that "[a] bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry

---

[17] The court in Caesars concluded: "[committee issues can be addressed through other remedies under the Bankruptcy Code] not by the unauthorized disbanding or hamstringing of a committee the U. S. Trustee has appointed *under § 1102(a)(1)*."  In re Caesars Entm't Co., 526 B.R. 265, 271 (Bankr. N.D. Ill. 2015) (emphasis added).

out the provisions of' the Bankruptcy Code . . . [b]ut in
exercising those statutory and inherent powers, a bankruptcy
court may not contravene specific statutory provisions." "It is
hornbook law that § 105(a) 'does not allow the bankruptcy court
to override explicit mandates of other sections of the
Bankruptcy Code.'" Id. at 421 (citations omitted).  The court
held that it would be "impossible" to "'carry out' the
provisions of the Code" if a court took "action that the Code
prohibits." Id.  "That is simply an application of the axiom
that a statute's general permission to take actions of a certain
type must yield to a specific prohibition found elsewhere." Id.
(citations omitted).  The Supreme Court has "long held that
'whatever equitable powers remain in the bankruptcy courts must
and can only be exercised within the confines of' the Bankruptcy
Code." Id.

The Supreme Court in Law held that the chapter 7 trustee's
attempt to "surcharge" debtor's $75,000.00 California homestead
exemption to pay for administrative expenses he incurred in the
performance of his duties was unauthorized because it
contravened a specific provision of the Code. Id. at 422.[18]
In Law, there was a specific code provision, § 522(k), that
explicitly forbade the relief the trustee requested.  But here,

_____

[18] "Section 503(b)(2) provides that administrative expenses include
'compensation . . . awarded under' § 330(a); § 330(a)(1) authorizes
'reasonable compensation for actual, necessary services rendered' by a
'professional person employed under' § 327; and § 327(a) authorizes the
trustee to 'employ one or more attorneys . . . to represent or assist the
trustee in carrying out the trustee's duties under this title.'" Law, 571
U.S. at 422.

Section 522(k) states "[p]roperty that the debtor exempts under this
section is not liable for payment of any administrative expense except . . .
," but none of the listed exceptions applied in Law.

there is no specific code provision that explicitly forbids the
court from vacating the appointment of an unsecured creditors'
committee.  Section 1102 states that the UST, not the court,
shall appoint the committee.  But there is no statute that
forbids the court from disbanding a committee. See generally In
re City of San Bernardino, 566 B.R. 46, 63 (Bankr. C.D. Cal.
2017) (distinguishing as inapplicable chapter 11 cases holding
that a third party injunction is not allowed in a Plan when
evaluating a chapter 9 Plan of Adjustment and noting Law did not
preclude application of § 105(a) in the absence of a contrary
statutory mandate); see generally Clark's Crystal Springs Ranch,
LLC v. Gugino (In re Clark), 548 B.R. 246, 252-53 (B.A.P. 9th
Cir. 2016) (noting Law did not change the bankruptcy court's
authority to order substantive consolidation under § 105, other
statutes and Ninth Circuit law); Official Comm. of Unsecured
Creditors of SGK Ventures, LLC v. NewKey Grp., LLC (In re SGK
Ventures, LLC), 521 B.R. 842, 849 (Bankr. N.D. Ill. 2014)
("[t]here is no provision of the Bankruptcy Code prohibiting a
grant of derivative trustee standing, and so Law has no bearing
here").

        The argument that the court cannot disband Committee
because the power was not specifically conferred under §§ 1102
and 1103 ignores that § 105 authorizes the court to issue "any
order . . . that is necessary or appropriate to carry out the
provisions of this title" (emphasis added).  UST has a duty to
appoint a creditors committee under § 1102(a)(1) (incorporated
under chapter 9) "as soon as practicable after an order for
relief under chapter 11 . . . ."  Here, no order for relief was

entered under chapter 11.  Consequently, to carry out that
provision of the Code, Committee must be disbanded.[19]

    Third, this ruling is consistent with the limited role UST,
the court, and creditors have in chapter 9 cases.  28 U.S.C.
§ 586 sets forth a nonexclusive list of duties of UST.  Notably,
duties in chapter 9 cases are not specifically listed there.
That said, subdivision (a)(5) says, UST shall: "perform the
duties prescribed for the United States trustee under title 11
and this title, and such duties consistent with title 11 and
this title as the Attorney General may prescribe."  The court
here holds UST has no mandatory duty to appoint a creditors
committee in a chapter 9 case.[20]  Though having no force of law,
UST policies recognize the limited role played in a chapter 9
case: "[t]he United States trustee's limited role in chapter 9
cases avoids the potential for actual or perceived interference
with the sovereign power of the states in a manner that would
run afoul of the Tenth Amendment."[21]

    This decision does not minimize the valuable effect
committees have in Chapter 9 or 11 cases.  This decision does
not criticize the parties appointed to Committee here.  The

---

[19] The court is unpersuaded by Committee's extension of the Supreme
Court's holding in <u>Law</u>.  The notion that the Court's reference to the
"exhaustive" list of exemptions and the specific exceptions to exempt
property not liable for debts in § 522 equate to a statutory mandate
prohibiting committee disbandment, ignores the holding in the case.  <u>Law</u> held
the bankruptcy court could not surcharge the homestead exemption because the
exemptions were "final" and § 522 specifically lists the exceptions to the
exemptions.  The egregious behavior of the debtor there was not among them.
[20] It appears UST policy though is to continue to appoint creditor's
committees in chapter 9 cases except in the Eastern District of Michigan —
the district where <u>Detroit</u> was decided. United States Trustee Policy and
Procedures Manual Chapter 5-1.9 fn 1) (U.S. Dept. of Justice 2015) accessed
at https://justice.gov./ust/united-states-trustee-program-policy-and-procedures-manual last visited Sept. 30, 2019.
[21] <u>Id.</u> Chapter 5-2.

25

court was asked to examine a relatively uncharted area of law and apply the statutes at issue as written.  The difficulty this issue presents is born not from the parties' bad faith or poor choices, but the limits on the ability of Congress to consider every scenario when a statute is codified or amended.[22]

## CONCLUSION

Debtor's motion to vacate the appointment of the Unsecured Creditors Committee and amended appointment of the committee is GRANTED.  The Committee shall be disbanded.  Accordingly, the employment applications of Smiley, Wang-Ekvall, LLP and Frandzel, Robins, Bloom and Csato, L.C. shall be DENIED WITHOUT PREJUDICE as moot.  Beckman's motion to appoint a creditors committee under § 1102(a)(2) is continued to a later date that has been set by the court.  Separate orders shall issue.[23]

**Dated:** Oct 02, 2019                    **By the Court**

René Lastreto II, Judge
United States Bankruptcy Court

---

[22] Beckman's arguments are not fully addressed here because they largely rested on UST's exercise of discretion.  The court here finds in this case UST did not have discretion because the appointment of Committee was unauthorized.

[23] This memorandum is the court's findings of fact and conclusions of law under Civil Rule 52 (made applicable to bankruptcy contested matters under Rules 7052 and 9014(c)).  Should it be determined this contested matter is not a core proceeding, then this memorandum shall be the court's proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1).

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**


    The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ___X___, via the U.S. mail.

Cameron Gulden
300 Booth St #3009
Reno NV 89509

Don J. Pool
8080 N. Palm Ave., Third Floor
Fresno CA 93711

Michael J. Gomez
1000 Wilshire Boulevard, 19th Floor
Los Angeles CA 90017

Riley C. Walter
265 E River Park Circle #310
Fresno CA 93720

Robert S. Marticello
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno CA 93721